# COURT OF APPEALS.

## July 12, 1918.

## THE PEOPLE v. NICK TODORO.

(224 N. Y. 129.)

EVIDENCE—DOCUMENT FROM FOREIGN COUNTRY—INSUFFICIENT AUTHENTICA-
TION.

A paper which purports to be a copy of a record of birth in a foreign
country which does not disclose that it was compared with the original
record and fails to disclose it was certified in accordance with the form in
use in that country or that it was duly authenticated, does not comply
with the requirements of law with reference to the admission of docu-
mentary evidence. (Code Civ. Pro., §§ 956, 957; Code Crim. Pro., § 392.)

SAME—ERRONEOUS CHARGE TO JURY AND SUBMISSION OF COPY OF RECORD OF
BIRTH IN FOREIGN COUNTRY AS BEING AN OFFICIAL AND LEGALLY AUTHENTI-
CATED DOCUMENT.

On the trial of defendant for rape in the second degree, where it was
incumbent upon the People to establish that the female was under the
age of eighteen years, the charge is susceptible of being construed as in-
struction by the court to the jury that such a document, having been
received in evidence, was as matter of law not only official but a legally
authenticated document. The action of the jury with reference thereto
permits of the implication that it had material weight adverse to the
defendant and it is, therefore, reversible error.

(People v. Todora, —— App. Div. —— reversed.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
March 7, 1917, which affirmed a judgment of the Oneida
County Court rendered upon a verdict convicting the defendant
of the crime of rape in the second degree.

The facts, so far as material, are stated in the opinion.

*Thomas J. McNamara,* for appellant.

The so-called birth certificate of the complaining witness was
improperly received in evidence. (Kobbe v. Price, 14 Hun,

55; People v. Sheppard, 44 Hun, 565; State v. Snover, 63 N. J. L. 382; Guthrie v. Haines, L. R. 13 Q. B. D. 818; Verien v. Berger, 35 Ill. App. 112; Durfee v. Abott, 61 Mich. 471; Houlton v. Manteuffel, 51 Minn. 185; Kabok v. Phœnix Mut. Life Ins. Co., 4 N. Y. Supp. 718; McQuirk v. Mut. Benefit Life Co. of Hartford, 20 N. Y. Supp. 908; Hegler v. Faulkner, 153 U. S. 109.)

*William R. Lee, District Attorney (Arthur S. Evans of counsel), for respondent.*

The certificate of birth of the complainant was properly admitted as corroborative evidence on the question of age. (Hatcher v. Rocheleau, 18 N. Y. 86; Douler v. Prudential Ins. Co. of America, 128 N. Y. Supp. 396; Feinman v. Grand Lodge Brith Abraham, 149 N. Y. Supp. 863; Hoffman v. Met. L. Ins. Co., 119 N. Y. Supp. 979; Comm. v. Hollis, 170 Mass. 433; Meehan v. Catholic Ben. Legion, 88 N. Y. Supp. 821; 194 N. Y. 577; Hartshorn v. Met. L. Ins. Co., 55 App. Div. 471; Jacobi v. Order of Germania, 73 Hun, 602; Maxwell v. Chapman, 8 Barb. 579; Jackson v. Goes, 13 Johns. 518; Jackson v. Cody, 9 Cow. 140; Layton v. Kroft, 98 N. Y. Supp. 72.)

HOGAN, J.:

The defendant was charged with the crime of rape in the second degree, alleged to have been committed January 17, 1916, upon Laura Passarella, a female under the age of eighteen years, to wit, of the age of fifteen years.

It was incumbent upon the prosecution to establish as a necessary element of the crime that at the date of the alleged commission thereof January 17, 1916, the female was under the age of eighteen years, and to furnish evidence corroborative of her testimony.

Upon the direct examination of the female she testified she

would be sixteen years of age on July 23, 1916, a date about two months subsequent to the time of the trial; that she went by the name of Laura Passarella, the name her mother called her. Her mother is dead. She had been in the United States seven years in July (1916). She came to this country in July, 1911, then being ten years of age, accompanied by her mother and stepfather; that her father and stepfather are in Italy.

The foregoing was the only parole evidence adduced by the People upon the subject of the age of the female. Upon cross-examination the witness freely admitted that she had been guilty of numerous acts of such character as might lead a jury to hesitate or refuse to credit her as a witness. So far only as bears upon her age will reference be made to the cross-examination. She testified she was known as Rose Nuitta when she attended school, that her stepfather's name was Joe Nuitta, and that he and her father are still alive. When she went to school, seven years ago, in July, 1911, she gave her age as twelve years; in 1914 after leaving school she applied for work under the name of Rose Nuitta and being required to give her age she said she was then sixteen years old. In May, 1915, she was married to a man with whom she lived about three weeks. Upon application for the marriage license she made affidavit that her age was eighteen years.

Upon re-direct examination she said her mother gave her age as twelve years in the school in her presence, and likewise she was told to give her age as sixteen years to secure employment and of eighteen years to secure a license to be married.

The district attorney offered in evidence a paper which he characterized as a transcript of the record of the birth of the witness. Translated, the paper reads:

" Province of Reggio Calabria—District of Gerace. Municipality of Palcanica. Office of the Civil State. Extract from the registrar of births of the year 1900.

" The year 1900, the 23d day of July, at 10 A. M. in Municipality house. Before me Vincenzo De Angelis, Secre-

tary of the Municipality, delegated with act of September 1st of last year, duly approved officer of the Civil State of the Municipality of Placanica, has appeared Passarelli Nicola of the age of 31, tailor, domiciled in Placanica who has declared to be that at 3 P. M. of the 22d day of the current month, in the house situated in Via Princip I Napoli, from Pania Filomena Uglianna, his wife, spinner, with him living was born a child of female sex which he presents to me and to whom he gives the names of Maria-Carmela-Aurelia.

"At the foregoing and at this act were present as witnesses, Fante Angelo of the age of 36, shoemaker, and Panaia Nicola of the age of 42, property owner, both residents of this Municipality.

"Having read the present act to all intervened is with me subscribed by the declarer only as the witnesses are illiterate.

"(signed)   PASSARELLI NICOLA,<br>"V. DE ANGELIS.

"For copy in conformity with the original released at the request of the illustrious Sir Attorney of the King of Gerace.

"Placanica the 25th day of March, 1916.

"The Officer of the Civil State,<br>"N. Musco.

"Municipality of Placancia,<br>"Reggio Calabria.

"Seen for the legalization of the signature of the Sir Officer of the Civil State of Placanica.

"Gerace the 28th day of March, 1916.

"THE CHANCELLOR                    THE PRESIDENT
        "of the Civil and Penal Tribunal of Gerace."

The paper bore two seals, one "Municipality of Placanica, Reggio Calabria," the other "Civil and Penal Tribunal of Gerace."

Objection to the reception of the paper in evidence was timely made upon specific and ample grounds. The objection was overruled and an exception noted. The paper was admitted as evidence for the purpose of not only establishing the age of the female but as corroboration of the testimony given by her as to her age.

The reception of the paper in evidence constituted material error. Section 956, Code of Civil Procedure, provides that a record or document on file in a public office of a foreign country, certified according to the form in use in that country, is evidence when authenticated in the manner prescribed in that section.

Section 392, Code of Criminal Procedure, provides: "The rules of evidence in civil cases are applicable also to criminal cases, except as otherwise provided in this Code."

The district attorney contended that the paper was admissible in evidence under section 817, Penal Law, as a transcript of the record of birth recorded in a bureau of vital statistics or board of health, duly authenticated by its secretary or under its seal.

The section referred to is designated as "Presumption of responsibility in general as to child of seven years or more." Without deciding whether or not the section referred to has any application to the present case, the paper was not authenticated as required by law to permit the same to be read in evidence.

The paper is what purports to be a copy of a record. It does not disclose that it was compared with the original record (Code of Civil Procedure, section 957) ; it fails to disclose it was certified in accordance with the form in use in Italy or that the same was duly authenticated, and generally fails to comply with the requirements of law with reference to the admission of documentary evidence.

It was the duty of the trial judge to determine in the first instance as matter of law the sufficiency of the paper as evidence. That he did so by overruling the objection may be granted, but

subsequently in his charge to the jury, he, in effect, permitted the jurors to determine the authenticity and sufficiency of the paper as evidence. Referring to the paper, he charged the jury: " If you accept Exhibit 1 as an authentic instrument, a copy of a record and believe it, it would be very good evidence of her age and it would meet the legal requirements of corroboration, providing you believe it a *bona fide* official document and that it relates to Laura Passerella in fact. * * * . Is this Exhibit 1, this certificate, is that certificate a certificate of her birth? Of course, if you are convinced of that it would furnish very strong corroboration of what she says."

That the jurors entertained doubt as to the charge of the trial judge relating to the effect of the paper is evident from the record which discloses that the jury retired at 2:30 P. M. in possession of the exhibits, that at 5 P. M. the jury returned into court for instructions.

One of the jurors, addressing the court, said: " If the court please, we came out for further instructions in regard to the validity, or if this would be an authentic record of the birth of this girl as stated in this document, Exhibit 1?

The court replied: " Why, gentlemen, it is not for me to say that it is or that it is not. It apparently is an official document. It apparently comes from an official scource in Italy, and I think as to that I can say to you that it is official and *presumably authentic*. Now as to whether that applies to and refers to the girl in this case is for you to decide and not for me. That perhaps is a question of fact, if that is the question that is troubling you, you would have a right to consider the name of the infant, and that the name of her parents, as they appear in there. That is a question which I say is one of fact and is for you to decide, but as the document stands in this case it has been received in evidence and thereby recognized as an official instrument and an authentic document. Does that cover what you want to know?

Juror, " Yes."

An exception was duly taken to this part of the charge. The jury then retired and at 5:15 P. M. returned with a verdict of guilty.

I have quoted this incident at length as bearing upon the materiality of the error in the admission of the paper, especially in view of the fact that the affirmance by a divided court at the Appellate Division was made under the provisions of section 542 of the Code of Criminal Procedure.

While in the main charge to the jury and in the first part of the supplementary charge the jury was permitted to find whether or not the paper was a *bona fide* official document, as well as a certificate of birth of the female, the closing words of the charge are susceptible of an instruction to the jury that the document having been received in evidence was as a matter of law not only official but a legally authenticated document. The document being inadmissible, the exception to the charge was well taken.

The jury had deliberated nearly three hours before returning for additional instructions. It is fair to assume that during that time due consideration had been given to the oral testimony of the female as to her age and the credibility of her evidence as well as to her apparent age from her appearance on the witness stand. The fact that the jury returned a verdict within fifteen minutes after the final instruction that the document was official and authentic permits of an implication that the presence of such document so characterized by the court had material weight in the determination of the case adverse to the defendant. Therefore, the error of the court was material.

The judgment of conviction should be reversed and a new trial ordered.

HISCOCK, Ch. J., CHASE, COLLIN, CUDDEBACK, CARDOZO and McLAUGHLIN, JJ., concur.

Judgment of conviction reversed, etc.